STATE OF INDIANA *v.* MARTINSVILLE DEVELOPMENT COMPANY, INC.

[No. 1-477A66. Filed August 30, 1977.]

*Theodore L. Sendak,* Attorney General, *Charles D. Rodgers,* Deputy Attorney General, for appellant.

*Roger T. Coffin,* of Martinsville, for appellee.

## NATURE OF THE CASE

LOWDERMILK, J.—Plaintiff-appellant, State of Indiana (State), perfects this appeal following the trial court's entry of judgment

in favor of defendant-appellee, Martinsville Development Company (M.D.C.), upon its Trial Rule 60(B)(7) motion which sought relief from a final judgment theretofore entered.

## FACTS

The facts necessary for our disposition of this appeal are as follows: On August 3, 1962, State commenced condemnation proceedings against certain land owned by M.D.C. Trial by jury on the objections tendered by both parties to the appraisers' report was commenced on February 28, 1966, and concluded on March 4, 1966. On March 19, 1966, the trial court entered judgment upon the verdict of the jury, which omitting caption and formal parts was as follows:

"* * *

Comes now the plaintiff, State of Indiana, by John J. Dillon, Attorney General, and Charles W. Ardery, Jr., and James Nickels, Deputies Attorney General, and comes now the defendants, Martinsville Development Company, Inc., by their attorneys of record herein, William Wehrle and Gilbert Butler and this cause having been submitted for trial by jury upon the issues formed by the exceptions heretofore filed by the plaintiff, and said defendants, said jury returned its verdict herein on the 4th day of March, 1966, in favor of the defendants and against the plaintiff in the sum of Twenty Thousand One Hundred Thirty Four Dollars ($20,134.00).

And the Court being duly advised finds as follows:

1. That the plaintiff, State of Indiana, paid the award of the court appointed appraisers in the amount of Thirty Five Thousand Four Hundred Fifty Dollars ($35,450.00), together with the fees for said appraisers to the clerk of the court on the 18th day of September, 1962.

2. That the order of appropriation entered herein on the 17th day of August, 1962, for an easement for highway right of way over the defendants' real estate as described in the plaintiff's complaint should be confirmed.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the order of appropriation entered herein on the 17th day of August, 1962, be and the same is hereby confirmed

and the easement for highway right of way over defendants' real estate described in plaintiff's complaint be, and the same is appropriated, said easement for highway right of way being more particularly described as follows:

* * *

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the defendants, Martinsville Development Company, Inc., have and recover from the State of Indiana as final and total damages the sum of Twenty Thousand One Hundred Thirty Four Dollars ($20,134.00), which said amount has already been paid the defendants herein when they withdrew the court appointed appraisers award of Thirty Five Thousand Four Hundred Fifty Dollars ($35,450.00), so nothing more is owing the defendants in this cause.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the defendants shall refund to the Clerk of the Court the sum of Fifteen Thousand Three Hundred Sixteen Dollars ($15,316.00), and the Clerk of the Court shall pay said partial refund of the court appointed appraisers' award to the plaintiff, State of Indiana.

* * *"

Thereafter, on February 24, 1976, M.D.C. filed a motion with the trial court pursuant to Indiana Rules of Procedure, Trial Rule 60(B)(7) seeking relief from the former judgment. It was M.D.C.'s contention that the former judgment of $20,134.00 was predicated upon evidence that State would construct it a limited access right-of-way from the new State Road 37 By-Pass to the residue of its land, and having failed to do so, it was damaged in an amount higher than had previously been awarded. M.D.C. contended that without the limited access right-of-way connecting the residue of its property to the State Road 37 By-Pass it was damaged in the additional amount of $12,096.00.

The record discloses that plans had been made by the Indiana State Highway Commission to construct M.D.C.'s limited access right-of-way during the time that the State Road 37 By-Pass was being constructed or at any time in the future; however, State's duty to construct M.D.C.'s right-of-way was conditioned upon

M.D.C.'s first constructing a public approach road to State's right-of-way line.

On June 18, 1976, in response to State's answer to its TR. 60(B)(7) motion that it was still willing to build the right-of-way upon M.D.C.'s completion of the public approach road, M.D.C. started to construct the public approach road. On June 18, 1976, the Morgan Circuit Court enjoined M.D.C. from further construction efforts, and on July 27, 1976, the same court ordered the approach road vacated.

On September 21, 1976, the trial court amended its former judgment of March 19, 1966, omitting formal parts, as follows:

"* * *

This cause came on for hearing on Motion of the Defendant, Martinsville Development Company, Inc., pursuant to the provisions of Trial Rule 60B (7), requesting relief from the final judgment rendered herein on March 19, 1966. Upon due consideration thereof, the Court finds that the final judgment should be amended and modified, and that the court should assess additional damages in the sum of Twelve Thousand Ninety Six Dollars ($12,096.00) to the residue of the land owned by the Defendant, Martinsville Development Company, Inc., on the grounds that the limited access right-of-way was never constructed by the Plaintiff herein, and it is no longer equitable that the original judgment should have prospective application.

IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT, that the original final judgment rendered on March 19, 1966 is hereby amended and modified, and additional damages are hereby assessed in favor of Defendant, Martinsville Development Company, Inc., and against the Plaintiff, State of Indiana, in the amount of Twelve Thousand Ninety Six Dollars ($12,096.00) on the grounds that it is no longer equitable that the original judgment should have prospective application.

* * *"

## ISSUES

1. Whether the trial court exceeded its equitable jurisdiction in granting relief under TR. 60(B)(7).
2. Whether M.D.C. had an adequate remedy at law.

3. Whether the award of damages was excessive.

## DISCUSSION AND DECISION

Issue One

State argues that the trial court exceeded its equitable jurisdiction by modifying the condemnation award of March 19, 1966, by the remedy of TR. 60(B)(7), more than 10 years after its rendition. We agree with State that equitable relief should not have been afforded M.D.C. under the provisions of TR. 60(B)(7).

TR. 60(B)(7) provides as follows:

(B) Mistake — Excusable neglect — Newly discovered evidence — Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order, default or proceeding for the following reasons:

\* \* \*

(7) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or *it is no longer equitable that the judgment should have prospective application*; or" (Our emphasis)

To establish that it is *no longer equitable* for a final judgment to have prospective application it is necessary for the movant to show that there has been a change of circumstances since the entry of the original judgment and that the change of circumstances was not reasonably foreseeable at the time of entry of the original judgment. *Warner v. Young America Volunteer Fire Dept.* (1975), 164 Ind. App. 140, 326 N.E.2d 831. Additionally, to obtain relief from the operation of a final judgment under this provision of TR. 60(B)(7), it is necessary that the original judgment have *prospective application*. 7 J. MOORE, FEDERAL PRACTICE ¶ 60.26[4], at 327 (2d ed. 1948); 11 C. WRIGHT and A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2863, at 202 (1973).

Our examination of Indiana precedent has uncovered no case which defines for us when a final judgment has prospective application within the meaning of TR. 60(B)(7). We look therefore to

the federal rules, upon which our trial rules are patterned, for guidance.[1]

An examination of the federal cases which have dealt with the application of F.R. Civ. P. 60(b)(5) discloses that the movants therein have for the most part sought relief from the operation of an injunction. The cases disclose that the federal courts have been called upon to exercise their inherent equitable power to grant relief from the operation of a judgment, mandating a party to perform or to refrain from performing some act, upon a showing that subsequent legislation has altered the substantive rights of the parties, there has been a change in decisional law, or the operative facts upon which the original decree was based have changed. *See, United States v. Swift & Co.* (1932), 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; *Pennsylvania v. Wheeling & Belmont Bridge Co.* (1856), 59 U.S. (18 How.) 421, 15 L.Ed. 435; *Coca-Cola Co. v. Standard Bottling Co.* (10th Cir. 1943), 138 F.2d 788.

In *Swift, supra,* at 286 U.S. at 114-115, Justice Cardozo stated the principle as follows:

> "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent. The power is conceded by the Government, and is challenged by the interveners only. We do not go into the question whether the intervention was so limited in scope and purpose as to withdraw this ground of challenge, if otherwise available. Standing to make the objection may be assumed, and the result will not be changed. Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. *Ladner v. Siegel,* 298 Pa.St. 487, 494, 495; 148 Atl. 699; *Emergency Hospital v. Stevens,* 146 Md. 159; 126 Atl. 101; *Larson v. Minn. N. Electric Ry. Co.,* 136 Minn. 423; 162 N.W. 523; *Lowe v. Prospect Hill Cemetery Assn.,* 75 Neb. 85; 106 N.W. 429; 108 N.W. 978. The distinction is between restraints that give protection to rights fully accrued upon facts so nearly

---

1. The corresponding federal rule is found at Fed. R. Civ. P. 60(b)(5).

permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative. *Ladner v. Siegel, supra.* The result is all one whether the decree has been entered after litigation or by consent. *American Press Assn. v. United States*, 245 Fed. 91. In either event, a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. . ." (Original emphasis)

We wish to make clear, however, that relief from a final judgment pursuant to TR. 60(B)(7) need not be limited exclusively to relief from the operation of an injunction. *See, Equitable Life Assurance Society of the United States v. MacGill* (5th Cir. 1977), 551 F.2d 978 (declaratory judgment awarding, *inter alia,* attorney fees to be *hereafter* assessed, was ordered modified pursuant to F.R. Civ. P. 60(b)(5) and (6) to the extent that the judgment allowed the recovery of attorney fees).

It is the opinion of this court that a judgment has a prospective application or effect within the meaning of TR. 60(B)(7) when a person's right to do or not to do some act is continuously affected by the operation of the judgment in the future; or, the judgment is specifically directed toward some event which is to take place in the future and does not simply serve to remedy *past* wrongs.

From what has been said thus far, we think it clear that money judgments such as we have in the case at bar do not have prospective application, and the trial court therefore erred in affording M.D.C. relief under the provisions of TR. 60(B)(7). *See, Ryan v. United States Lines Co.* (2nd Cir. 1962), 303 F.2d 430.

During oral argument the possibility of affirming the judgment of the trial court pursuant to Ind. Rules of Procedure, Trial Rule 60(B)(8) was argued.

We have elected to discuss this argument and are of the opinion that the judgment of the trial court cannot be affirmed pursuant to the provisions of TR. 60(B)(8) which provides:

"On motion . . . the court may relieve a party . . . from a final judgment . . . for the following reasons:
(8) any other reason justifying relief from the operation of the judgment."

The record discloses that M.D.C. had the duty to construct an approach road before State's duty to build a limited access right-of-way arose. M.D.C. had constructive knowledge of this duty in 1966, and actual knowledge of this duty not later than 1971. The record discloses however that M.D.C. did not seek to construct the public approach road until June, 1976, approximately 10 years after the rendition of the original judgment. In the meantime, public sentiment against the approach road had become so great that an injunction was obtained by the area residents preventing M.D.C. from constructing the approach road. State in no way caused the injunction to issue. State always stood ready to construct the limited access right-of-way upon M.D.C.'s first constructing the approach road to its right-of-way line.

When a trial court is called upon to exercise its inherent equitable power to grant relief pursuant to TR. 60(B)(8), it should always seek to balance the equities of the parties lest it become an instrument of injustice. *H & A, Inc. v. Gilmore* (1977), 172 Ind. App. 10, 359 N.E.2d 259. The injury of which M.D.C. presently complains must at least to some degree be attributed to its delay in not expeditiously constructing the public approach road. It is axiomatic that when one of two innocent parties must suffer a loss he who is the least innocent must be made to bear it.

Owing to our disposition of this issue, we express no opinion as to the merits of State's additional assignments of error.

Judgment reversed.

Robertson, C.J. and Lybrook, J. concur.

NOTE—Reported at 366 N.E.2d 681.